UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

TAD ELDER,

    Plaintiff,

v.

ELLIOTT AVIATION, INC.; STEVE MEERSMAN; and GARY LARRISON,

    Defendants.

No. 4:15-cv-04123-SLD-JEH

ORDER

Plaintiff Tad Elder filed a five-count complaint against defendants Elliott Aviation, Inc., Steve Meersman, and Gary Larrison, for alleged employment-related misconduct. Compl., ECF No. 1-1.[1]  The defendants have moved under Rule 12(b)(6) to dismiss Counts IV and V, which allege intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NEID), based on preemption by various federal and state statutes, as well as for failure to state a claim.  Defs.' Mot. Dismiss ¶¶ 2–3, ECF No. 7.  They have also moved to strike several paragraphs from the pleading.  Id. ¶ 3.  For the reasons stated below, the motion to dismiss Count IV as to Elliot Aviation and the entirety of Count V is GRANTED.  The motion to dismiss the remainder of Count IV and the motion to strike are DENIED.

---

[1] This case was originally filed in state court.  The operative complaint therefore is an exhibit to the notice of removal.  See Not. Removal Ex. A, ECF No. 1-1.

1

BACKGROUND

Elder worked at Elliott Aviation from October 2003 through July 2013. Compl. ¶ 3. Meersman and Larrison also worked for Elliott Aviation throughout that time, and both were Elder's supervisors. *Id.* ¶¶ 4–5.

Following his stepson's diagnosis with severe autism in 2008, Elder applied for and was granted permission to take intermittent leave pursuant to the Family Medical Leave Act ("FMLA") to care for his stepson. *Id.* ¶¶ 8–12. He took FMLA leave on a number of occasions, and Meersman and Larrison began to "harass[ ]" him about missing work. *Id.* ¶¶ 12, 13. At the time of the harassment, Larrison was Elder's "team leader" and Meersman his "supervisor." *Id.* ¶ 14. Elder complained about the harassment to the manager of the paint shop (the division of Elliott Aviation where Elder was working), but it continued. *Id.* ¶ 15. By 2010, Elder had developed depression. Compl ¶ 16. Following a request in January 2013, Elliott Aviation approved Elder to take intermittent FMLA leave to deal with that condition. *Id.* ¶¶ 19, 20.

On July 9, 2013, Elder lodged a complaint with Becky Meyer, also an employee of Elliott Aviation, that Larrison and Meersman were harassing him about missing work due to his FMLA leave. *Id.* ¶ 20. Meyer investigated and determined that Larrison and Meersman had in fact been harassing Elder. *Id.* ¶ 21.

At the end of July 2013, Elder's physician prescribed a new medication to help treat his depression. Compl. ¶ 22. He took the new medication in the evening of July 28, 2013, and an "adverse reaction" caused him to oversleep the next morning and apparently to miss work. *Id.* ¶ 23. Elder called Elliott Aviation midafternoon on July 29, 2013, to explain the cause of his absence, but it was nevertheless designated as a "no-call/no-show," and Elder was fired the following day. *Id.* ¶ 24–26.

Elder's complaint alleges five counts: FMLA interference; FMLA discrimination; disability discrimination under the Americans with Disabilities Act; intentional infliction of emotional distress; and negligent infliction of emotional distress. The defendants have moved to dismiss portions of the complaint, and also to strike some of its allegations. *See* Fed. R. Civ. P. 12(b)(6), (f). The motion to dismiss is aimed at Counts IV and V of the complaint. Count IV alleges intentional infliction of emotional distress against all three defendants. Compl. ¶¶ 53–58. Count V alleges negligent infliction of emotional distress against all three defendants. Compl. ¶¶ 59–64. The defendants contend that both tort claims are preempted or otherwise barred by no fewer than three statutes: the FMLA; the Illinois Workers' Compensation Act ("IWCA"); and the Illinois Human Rights Act ("IHRA"). *See* Defs.' Mem. 3, ECF No. 8. And even if the IIED claim is not preempted, the defendants argue, the complaint fails to state a claim on which relief can be granted. *Id.* The motion to strike is contingent on the Court granting the motion to dismiss; the defendants maintain that the allegations related to the IIED or NIED claims, specifically paragraphs 8 through 15 of the complaint, are not related to the FMLA or ADA claims and are therefore immaterial.

Elder's response leads with some concessions. First, he admits the IWCA bars the IIED claim against Elliott Aviation. Pl.'s Mem. Resp. 2, ECF No. 12. Second, he agrees to dismiss Count V (the NIED claim) in its entirety. *Id.* Elder proceeds to argue that the IIED claims against his co-workers Larrison and Meersman are not preempted and are sufficiently pleaded.

ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted." That means among other things that it is "the pleader's responsibility to state a claim to relief that is plausible on its face."

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage of the case, a court must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

    a.    **Preemption**

        1.    **Family Medical Leave Act**

The defendants contend that because the FMLA's remedial provision only allows recovery of "any wages, salary, employment benefits, or other compensation denied or lost to [an] employee by reason of the [FMLA] violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I), the statute "preempts" a state law tort claim for emotional distress. Defs.' Mem. 4. Their argument assumes that Elder's IIED claim is based only on conduct made actionable by the FMLA. *Id.* ("Plaintiff is attempting to bootstrap damages not permitted under the FMLA by seeking them under state-law claims arising under the same operative facts.").

Federal preemption is an affirmative defense that flows from the Supremacy Clause of the Constitution, and it "operates to prevent the enforcement of state laws that conflict with federal laws or regulations." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005) (citing U.S. Const. art. VI, cl. 2). Whether a federal statute displaces a state law depends on whether Congress intended such a result. *Id.* at 746 (stating "congressional purpose" is "the ultimate touchstone" in a preemption analysis); *see also Patriotic Veterans, Inc.*

*v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013) (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

Congressional intent to preempt state law may manifest as express preemption, field preemption, or conflict preemption. *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). "Express preemption occurs when a federal statute explicitly states that it overrides state or local law." *Id.* Field preemption "exists when federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act." *Id.* And conflict preemption generally arises "if it would be impossible for a party to comply with both local and federal requirements or where local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* There is a presumption against federal preemption of state law. *Patriotic Veterans, Inc.*, 736 F.3d at 1046 ("[G]iven the historic police powers of the states, a court must assume that Congress did not intend to supersede those powers unless the language of the statute expresses a clear and manifest purpose otherwise.") (citing *Wyeth*, 555 U.S. at 565).

There is no express preemption provision in the FMLA. Indeed, the statute expressly disclaims preemptive effect. *See* 29 U.S.C. § 2651 (providing the FMLA does not preempt, for example, federal or state anti-discrimination laws). Nor does the FMLA completely preempt state law. *See id.* (stating that the FMLA does not prevent enforcement of state or local laws that deal with family or medical leave); *see also Bellido-Sullivan v. Am. Intern. Grp., Inc.*, 123 F. Supp. 2d 161, 165–66 (S.D.N.Y. 2000) ("Congress intended that the FMLA serve as a complement to state law.").

That leaves conflict preemption.[2]  It is true that district courts have found that the FMLA sometimes conflicts with and thus preempts some state law tort claims.  *E.g.*, *Kastor v. Cash Exp. of Tennessee, LLC*, 77 F. Supp. 3d 605, 614–15 (W.D. Ky. 2015) (Kentucky IIED claim preempted where it was predicated solely on "conduct that was made unlawful by the FMLA," and collecting authority holding similarly).  Those cases reason that because the FMLA provides a limited menu of remedies, *see* 29 U.S.C. § 2617(a)(1), and § 2617(a) does not permit recovery of emotional distress damages,[3] any state law that does permit recovery of emotional distress damages based on an FMLA violation conflicts with the statute's narrow remedial scheme.  *Kastor*, 77 F. Supp. 3d at 614–15 ("If a plaintiff could bring an IIED claim based on conduct that was made unlawful by the FMLA, she could circumvent th[e] exclusive remedial system that Congress created for FMLA violations [that does not provide emotional distress damages]."); *see also McAllister v. Quality Mobile X-Ray Servs.*, No. 3:12-cv-0078, 2012 WL 3042972, at *6 (M.D. Tenn. July 25, 2012) (holding FMLA preempts state law retaliatory discharge claim); *Alvarez v. Hi-Temp Inc.*, No. 03-C-2610, 2004 WL 603489, at *3–6 & n.6 (N.D. Ill. Mar. 24, 2004) (holding FMLA preempts state law "negligent supervision" claim where the defendant-employer allegedly failed to train its supervisors about employer's FMLA obligations, resulting in unlawful denial of leave request).[4]

---

[2] There is no argument to be made that an employer cannot both comply with the FMLA and not intentionally inflict emotional distress on its employees. *See Wyeth*, 555 U.S. at 753 ("Impossibility pre-emption is a demanding defense.").  Therefore, the Court focuses its analysis on whether enforcement of Illinois tort law obstructs the congressional purpose of the FMLA.

[3] Section 2617(a)(1) provides damages in the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation."  Federal courts have held and this Court agrees that the statute excludes damages for emotional distress.  *See, e.g.*, *Jackson v. City of Hot Springs*, 751 F.3d 855, 865 (8th Cir. 2014); *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1007 (6th Cir. 2005); *Beebe v. Williams College*, 430 F. Supp. 2d 18, 22 (D. Mass. 2006); *see also* 29 C.F.R. § 825.220(b); *cf.* 42 U.S.C. § 1981a (b) (specifically countenancing damages for mental anguish arising out of violations of Title VII).

[4] Many cases have held that the FMLA has no preemptive effect on state law tort claims related to FMLA violations. *See, e.g.*, *Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 572 (M.D.N.C. 1999) ("[A] plain reading of the [FMLA's

For his part, Elder argues only that Meersman and Larrison are not employers under the statute and therefore cannot be liable for any FMLA violations. *See* 29 U.S.C. § 2617(a)(1) ("Any employer who violates section 2615 of this title shall be liable to any eligible employee . . . ."). The FMLA defines employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees," and the term includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer . . . ." *Id.* §§ 2611(a)(4)(A)(i), (ii). The United States Department of Labor has issued a rule that offers guidance on how to apply that broad statutory language: "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R. § 825.104; *cf. Freemon v. Foley*, 911 F. Supp. 326, 332 (N.D. Ill. 1995) ("[B]ecause of the expansive interpretation given to the term 'employer' . . . we believe the FMLA extends to all those who controlled 'in whole or in part' [the plaintiff's] ability to take a leave of absence and return to her position."). The statute requires employers to refrain from interfering with or discriminating against an employee's exercise of FMLA rights. *See* 29 U.S.C. § 2615(a). Thus it is possible that Larrison and Meersman could be considered employers under the FMLA's broad definition of the term for the purposes of individual liability, if in fact they violated Elder's FMLA rights.

The defendants' FMLA preemption argument fails, however, because Elder's FMLA discrimination theory, at least as it relates to his supervisors, is not legally cognizable. To understand why Larrison's and Meersman's alleged conduct is not actionable under the FMLA requires some background. As relevant to this case, the FMLA entitles certain employees to take leave from work to care for themselves or family members who suffer from serious medical

---

preemption] provision and its sweeping language reveals that Congress did not intend the FMLA to supplant other claims, whether grounded in statutes or brought pursuant to state common law."); *Aldridge v. Indian Elec. Co-op.*, 07-CV-633-HDC-PJC, 2008 WL 1777480, at *4 & n.1 (N.D. Okla. Apr. 17, 2008).

conditions. 29 U.S.C. § 2612(a). Section 2615, in turn, generally prohibits employers from interfering with the Act's operation. Subsection (a)(1) states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1) (creating cause of action for FMLA interference). An FMLA interference case requires proof that an employer "denied [the plaintiff] FMLA benefits to which he was entitled." *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012); *Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). And subsection (a)(2) states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice" prohibited by the FMLA. 29 U.S.C. § 2615(a)(2) (creating cause of action for FMLA discrimination). The Seventh Circuit analyzes FMLA discrimination claims under the rubric of claims for retaliation, *see Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012), and an FMLA discrimination claim requires among other things proof of a "materially adverse action taken by the employer," *Scruggs*, 688 F.3d at 826. A materially adverse action, in addition to obvious examples like a demotion or termination, includes "any action[ ] that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)).

The allegations in this case do not support a reasonable inference that Larrison or Meersman could be liable for violating Elder's FMLA-derived rights. The complaint does not suggest, impliedly or otherwise, that any of Meersman's or Larrison's alleged conduct caused the denial of any benefits provided by the FMLA—that means an interference claim against the individual defendants is legally insufficient. Further, they are not alleged to have denied him

leave; demoted him; cut his shifts; or terminated him. In other words, it is not clear whether they are alleged to have taken a materially adverse action against Elder. *See White*, 584 U.S. at 68.

Instead, the individual defendants are alleged to have created something that sounds more like a Title VII hostile work environment. *See, e.g.*, *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014). The Court cannot find any case law suggesting such a theory of retaliatory liability exists under the FMLA, and with good reason. As noted above, no remedy could potentially flow from that kind of violation because the FMLA does not provide damages for emotional distress. That stands in contrast to Title VII, which as noted does provide for emotional distress damages, and suggests that Congress did not intend to create a cause of action for FMLA retaliation based on a pattern of verbal harassment. Instead, the FMLA regulates the relationship between the employer and employee as it relates to taking time off work to care for ill family members, 29 U.S.C. § 2601(b), and the Act's text focuses on damages related to easily quantifiable remediation like lost wages or the "cost of providing care," *id.* §§ 2617(a)(1)(A)(i)(I), (II). Accordingly, because Larrison and Meersman cannot be liable to Elder under the facts alleged for violating the FMLA, that statute has no preemptive effect on Elder's IIED claim.[5] *Cf. Arango v. Work & Well, Inc.*, 930 F. Supp. 2d 940, 944 (N.D. Ill. 2013) (denying motion to dismiss tortious interference claim against defendant third party administrator because defendant could not be liable for wrongful denial of leave under FMLA).

   2.   **Illinois Workers' Compensation Act**

The defendants next argue that the IWCA bars Elder's IIED claims against his supervisors. The IWCA, *see* 820 ILCS 305/5(a), generally bars tort claims against employers,

---

[5] If the Court has misunderstood Elder's theory of FMLA liability as it relates to Larrison and Meersman, it will entertain a motion for reconsideration, provided such a motion is supported by Seventh Circuit case law. The Court notes, however, that in the event Elder seeks to hold Larrison and Meersman liable for FMLA discrimination under § 2615(a)(2) based on a retaliation theory, his IIED claim would likely be preempted given the foregoing analysis.

but it does not preclude intentional tort claims against co-workers, *see Meerbrey v. Mashall Field & Co.*, 564 N.E.2d 1222, 1230 (Ill. 1990), and therefore the defendants' argument fails.

The Illinois legislature enacted the IWCA to "provide financial protection for the injured worker." *Pathfinder Co. v. Indus. Comm'n*, 343 N.E. 2d 913, 916 (Ill. 1976). Compensation under the IWCA, however, contains a quid pro quo: "[the injured worker] cannot invoke common law tort remedies against the employer." *Id.* at 917; *see also* 820 ILCS § 305/5(a). Section 11 further explains that compensation provided by the IWCA is "the measure of responsibility of any employer . . . for accidental injuries sustained by any employee arising out of and in the course of the employment." 820 ILCS § 305/11.

Notwithstanding the statutory provisions cited above, the Illinois Supreme Court has held that "the exclusive remedy provisions of the [IWCA] do not bar employees from pursuing a common law action against co-employees for injuries arising out of intentional torts." *Meerbrey*, 564 N.E.2d at 1230. At this stage of the case, it is at least a fair inference that Meersman and Larrison were not Elder's employers under the IWCA. *See* 820 ILCS § 305/1(a)(2) (defining employer under the IWCA). Accordingly, the IWCA does not bar the IIED claims against them. *See Simpson v. Wayne County, Ill.*, No. 13-cv-359-JPG-SCW, 2013 WL 4411018, at *3 (S.D. Ill. Aug. 15, 2013) (citing *Meerbrey* and finding IWCA barred IIED claims against plaintiff's employer but not against her co-workers).

### 3. Illinois Human Rights Act

The defendants' third procedural bullet posits that the IHRA operates as a bar to an IIED claim against a co-worker. Broadly speaking, the IHRA contains Illinois's analog to Title VII, *see* 775 ILCS § 5/2-102, and provides a comprehensive remedial scheme to adjudicate employment discrimination disputes arising under that law, *see* 775 ILCS § 5/8-111. "The

[Illinois Human Rights Commission] has exclusive jurisdiction over claims of civil rights violations" premised on violations of the IHRA. *Mendez v. Perla Dental*, 646 F.3d 420, 422 (7th Cir. 2011) (citing 775 ILCS § 5/8-111(C)). The IHRA's exclusivity provision has been interpreted to strip courts' jurisdiction over common law tort claims based solely on conduct that violates the IHRA. *See Blount v. Stroud*, 904 N.E.2d 1, 7–10 (Ill. 2009); *Maksimovic v.Tsogalis*, 687 N.E.2d 21, 23–24 (Ill. 1997); *Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273 (Ill. 1994). IHRA preemption is extremely limited in scope: "[i]f the plaintiff's allegations against the defendant implicate only a duty provided by the IHRA, such as the duty of employers to refrain from discriminating against employees on the basis of their race or national origin, [then] the plaintiff's claim is preempted." *Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. 2007); *see also Blount*, 904 N.E.2d at 9 ("A legislative intent to abrogate the common law must be clearly expressed. A plain reading of the [IHRA] reveals no legislative intent to abolish all common law torts factually related to [an IHRA violation].").

Section 2-102 lists civil rights violations related to employment. 775 ILCS § 5/2-102. As relevant to this case, the IHRA proscribes the discharge of an employee by an employer on the basis of unlawful discrimination. *Id.* § 5/2-102(A). Discrimination on the basis of disability is unlawful. *See* 775 ILCS § 5/1-103(Q). It is also against the law for an employer to retaliate against an employee for invoking the IHRA's protections. 775 ILCS § 5/6-101(A).

It is worth mentioning that the defendants have not indicated why the IHRA preempts the IIED claims against Larrison and Meersman; instead they state that Elder's "allegations of emotional distress are inextricably linked to—and in fact, are based solely on—his FMLA and/or ADA claims." Defs.' Mem. 9. While some of what Elder complains about is related to his alleged disability (a potential claim for unlawful discharge), Elder alleges that Meersman and

11

Larrison are liable for IIED based on a different course of conduct: that they harassed him because he took time off from work. Even if the harassment was tangentially related to Elder's FMLA leave, the defendants miss the point of IHRA preemption—it bars common law tort claims only when an IHRA violation forms the basis for the tort claim. Here, the defendants argue that the Court lacks jurisdiction over a tort claim arising out of conduct related to a federal law violation, which distorts the Illinois Supreme Court's construction of the IHRA's exclusivity provision. Accordingly, the motion to dismiss is denied to the extent it relies on IHRA preemption.

### b.    Sufficiency of the IIED allegations

To prevail on an IIED claim under Illinois law, a plaintiff must ultimately prove: "(1) the defendant engaged in 'extreme and outrageous' conduct toward the plaintiff; (2) the defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress; (3) the plaintiff endured "severe [and] extreme" emotional distress; and (4) the defendant's conduct actually and proximately caused the plaintiff's distress." *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. Ct. 2012). "[E]xtreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage," and "courts may consider whether the defendant abused a position of actual or apparent authority over the plaintiff." *Id.*; *see also McGrath v. Fahey*, 533 N.E.2d 806, 809–10 (Ill. 1988) ("The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous . . . .").

It is not clear whether the defendants maintain that the IIED claim is insufficient as a matter of fact or law, but neither contention is correct. Based on the complaint's allegations,

12

there can be no serious argument that Meersman and Larrison are not on notice of the nature of Elder's IIED claim. Dismissal based on factual insufficiency is therefore unwarranted. As to legal insufficiency, the following allegations are relevant: Elder's direct supervisors harassed him for a years-long period of time at least in part because he exercised federally protected rights; the harassment was bad enough that Elder complained to Elliott Aviation at least twice and one complaint was substantiated; and Elder developed depression around the time of the harassment. Taken together and drawing all inferences in Elder's favor, these allegations display behavior that checks the boxes of an IIED claim as identified by Illinois courts, especially so given the position of authority the defendants occupy over Elder in the workplace and the fact that the harassment allegedly continued after several complaints. Further factual development may show that the defendants' conduct was not extreme or outrageous, or that the claim otherwise fails for want of proof. But this is the pleading stage; proof comes later. *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014). The complaint states a claim for IIED against Larrison and Meersman, the motion to dismiss is therefore denied.

The motion to strike is wholly dependent on the Court granting the motion to dismiss the IIED claim. The allegations the defendants seek to strike are material to the IIED claim. The motion is denied.

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss and strike, ECF No. 7, are DENIED. In light of Elder's concessions, Count IV is dismissed as to defendant Elliott Aviation and Count V is dismissed in its entirety.

Entered September 20, 2016.

                                                                                         s/ Sara Darrow

                                                                                      _____
                                                                                                    SARA DARROW
                                                                                      UNITED STATES DISTRICT JUDGE